# CHARLESTON.

STATE *v.* DR. J. L. LAMBERT.

(No. 5381)

Submtted November 3, 1925. Decided November 10, 1925.

INTOXICATING LIQUORS—*Criminal Intent Held Necessary Element of Offense of Possessing Moonshine Liquor.*

Criminal intent is a necessary element to the statutory crime of possessing moonshine liquor, under section 37, chapter 32-A, Code.

(Intoxicating Liquors, 33 C. J. § 504.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Randolph County.

Dr. J. L. Lambert was convicted of the unlawful possession of moonshine liquor, and he brings error.

*Reversed and remanded.*

*W. B. & E. L. Maxwell,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assisting Attorney General for the State.

LITZ, JUDGE:

The defendant, Dr. J. L. Lambert, a practicing physician in Randolph county, was tried and convicted October 17, 1924, on an indictment charging him with unlawfully having in his possession a quantity of moonshine liquor, in violation of Section 37, Chapter 32-A Code. To the judgment of the circuit court, upon the verdict, imposing a jail sentence of sixty days and a fine of $100.00 and costs, the defendant prosecutes error.

According to the evidence of the prosecuting witnesses, Joe Moore and Bud Moore, several weeks prior to the indictment the former had an altercation with the defendant on a public road in Randolph county while he was intoxicated, during which the defendant was knocked down several times, causing a bottle containing liquor to fall from his pocket, which was seized by Joe Moore and some time later delivered by him to the sheriff of the county. None of the several other eye-witnesses introduced by the State testified to the alleged intoxication of the defendant, or to circumstances of the difficulty indicating whether defendant or his assailants were in fault.

The defendant denies that he was intoxicated, and contends that he was viciously assaulted by the Moores without justification. Edward Sharp, whose child the defendant attended immediately after the affray, says he observed no indication of intoxication on the part of defendant. Admitting his custody of the liquor, in explanation thereof, the defendant states that a short while prior to the difficulty and immediately after his visit to a fever patient in the country, he was called upon by three men traveling in an automobile to give professional attention to one of the party who apparently was suffering from the effects of poison; that after administering an hypodermic to relieve the sufferer, the bottle of liquor from which the sick man had imbibed was handed him by one

of the men with the request that he analyze the concoction and if it contained poison advise them through postoffice Box No. 147, Wheeling, West Virginia, of the analysis; and that he was taking the liquor home without any knowledge of its contents for the purpose of analyzing a portion himself, and of sending some to the laboratory of the University of West Virginia for analysis, when attacked without cause by the prosecuting witnesses.

The assignments of error go to the granting of an instruction in behalf of the State, and refusal of the two instructions asked by the defendant.

The instruction for the State, complained of, directed the jury to find the defendant guilty if he had the liquor in his possession. The instructions for the defendant, which were refused, would have told the jury that if they believed from the evidence the defendant had the liquid in his possession for the purpose of having it analyzed to ascertain its contents and that he had no knowledge that it was moonshine liquor, he should be acquitted, even though they may further believe that it was in fact moonshine liquor.

It will be observed that in granting and refusing the instructions under consideration the trial court was of the opinion that the "possession" in the ordinary sense of manual custody was all that the statute contemplated to justify a peremptory instruction, regardless of the purpose or intent of the accused. According to the principle of this ruling, the prosecuting witness Joe Moore, who admits to have taken the liquor home for several days before delivery to the sheriff, also would be guilty of violating the law.

We have held that the element of criminal intent is necessary to convict under the same section of the statute for the offenses of possessing a moonshine still *(State* v. *Edgell,* 94 W. Va. 198, 118 S. E. 144, *State* v. *Moore,* 95 W. Va. 604, 122 S. E. 147), and mash *(State* v. *Cirrillo,* 96 W. Va. 253, 122 S. E. 655). This Court has also decided under Section 31 of said Chapter 32-A, which is more drastic than the provisions of Section 37 under consideration, that "criminal intent is a necessary element to the statutory crime of unlawfully carry-

ing intoxicating liquor from one place to another in this State''. *State* v. *Lough,* 97 W. Va. 241. In *State* v. *Edgell, cited,* it is said:

> ''Were we to hold that mere physical possession of a contrivance suitable for making liquor, without any intent to use it for that purpose, would suffice to convict under the statute, would not the officer who seizes the still and carries it to the proper authorities be guilty under its terms? We understand that the custodian of the Department of Archives and History has several such mechanisms on display in his museum. We know of no law exempting him from prosecution. Would he not therefore be subject to prosecution under the act if we eliminate the element of intent?''

We are of opinion that under the facts and circumstances in the case the defendant was entitled to have the question of criminal intent submitted to the jury. It may be argued that his story was not plausible, and therefore worthy of little credence. This was a matter, however, for determination by the jury upon proper instructions from the court.

The judgment of the lower court will be reversed, the verdict of the jury set aside, and the defendant awarded a new trial.

*Reversed and remanded.*