# CHARLESTON.

STATE *v.* SID GREEN *et als.*

(No. 5563)

Submitted May 11, 1926.     Decided May 25, 1926.

1. CRIMINAL LAW—*Instruction Singling Out Accused and Charging Jury Especially As to His Credibility As Witness is Improper (Code, c. 152, § 19).*

    In a criminal case an instruction is improper and erroneous which singles out the accused and charges the jury specially as to his credibility as a witness.   (p. 705.)

    (Criminal Law, 16 C. J. § 2479.)

2. SAME—*Instruction Should Not Authorize Jury to Apply Maxim of Falsus in Uno, Falsus in Omnibus, Except*

*Where it Believes From Evidence That Witness Testified*
*Falsely to Material Fact.*

An instruction should not authorize the jury to apply the maxim of falsus in uno, falsus in omnibus, except where the jury shall believe from the evidence that a witness testified falsely as to a *material fact.*   (p. 707.)

(Criminal Law, 16 C. J. § 2447.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Boone County.

Sid Green and others were convicted of owning, operating, and having an interest in a moonshine still, and they bring error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Leftwich & Shaffer,* for plaintiffs in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

HATCHER, JUDGE:

The defendants were found guilty of owning, operating, and having an interest in a moonshine still, by a jury of Boone County, and by the Circuit Court thereof given the minimum sentence under the statute.

Prohibition Officer Lee Cook, who is now dead, and Constable Landen White found and watched a barrel of mash hidden in a wood in Boone County. About dark the four defendants came to the place where the mash was concealed. White testified in effect that the defendants brought with them a big copper kettle, which they set up on some rocks; that the weather indicated an approaching storm which the defendants discussed, and after examining the mash, said it would do until the next night; that the defendants then picked up the kettle and started to leave; that the officers recognized all four of the defendants, ordered them to halt, and when they started to run, fired to scare them; that Otis Green was arrested then, but the others ran away and were arrested next

day; and that the witness found at the place where the defendants had been two kettles, a copper worm, six half-gallon cans, a bag of flour, and some other articles, all of which apparatus is commonly called a moonshine still.

The defendants deny taking a kettle with them and say that they were out looking for a lost or stolen kettle belonging to Sid Green's mother; that they had heard of a kettle being at the place where the officers saw them, and had come to investigate; that they did not own, operate or have an interest in the apparatus found; and that they ran because the officers fired upon them. One of the defendants denied the conversation attributed to them by White.

Error is charged to the trial court because of the admission in evidence of certain statements of defendants while on preliminary examination before a· justice, and because of two instructions given at the request of the State.

The evidence complained of was not made the subject of a special bill of exceptions, or specified as a ground of the motion for a new trial. Therefore under Point 4, Syllabus, *State* v. *Noble,* 96 W. Va. 432, the error in respect to this evidence will be deemed to have been waived.

State's Instruction No. 1 is: "The Court instructs the jury that in considering all the evidence in this case they may consider the evidence of the prisoners and how far, if at all, their interest in the case might bias or prejudice their testimony, and you will give their evidence and all other evidence in the case such weight as you may think it entitled to."

Defendants cite *State* v. *Vest,* 98 W. Va. 138, which condemned an instruction similar in all respects to the one in this case as follows: "An instruction is disapproved which singles out the testimony of the accused in a trial for a criminal offense and tells the jury that they should take into consideration his interest in the result of the case and how far it might bias or prejudice his testimony, in determining the weight and credibility to be given to his evidence."

The Attorney General admits that "The instruction perhaps should be condemned", but does not consider it cause for reversing the case. It is true that the earlier decisions re-

garded such instructions with leniency; but the trend of modern authority is otherwise. So says Randall in the latest work on instructions, published in 1922. ''There is a growing tendency on the part of the courts to disapprove of instructions with respect to the testimony of the accused, which depart from the general rule against singling out a particular witness for the purpose of charging as to his credibility. In California, the earlier position of the courts on this subject has been abandoned, and it is now held, in this jurisdiction, that an instruction that it is proper for the jury to consider whether the interest of the defendant in a criminal case may not affect his credibility is vicious in calling particular attention to his testimony, and that it is reversible error to instruct that in determining the credibility of the accused it is proper for the jury to consider the consequences and temptations which would ordinarily influence a person in his situation. In Missouri the later cases hold, overruling a long line of earlier decisions, that it is reversible error to tell the jury that they may consider the interest of the defendant in the result of the trial.'' Randall's Instructions To Juries, p. 332 (Vol. 1). 14 R. C. L., p. 734-5; 16 C. J. par. 2479 (See many cases cited under note 84).

Instruction No. 1 in this case was a gratuitous attempt on the part of the State to judicially discredit the evidence of ''the prisoners'' before the jury. In effect it told the jury that while defendants' evidence could be considered, the Court thought it proper to caution the jury as to the defendants' credibility. The instruction dangled before the jury the idea that the interest of defendants might induce them to falsify. Sec. 19, Ch. 152, Code, not only permits an accused to testify, but declares that ''the accused shall—be a competent witness''. The word ''competent'' is defined by Webster's New International Dictionary as ''answering to all requirements; adequate; sufficient; suitable; capable; qualified; fit''. If the accused as a witness *answers to all requirements under* the law, he is entitled to exactly the same treatment as other competent witnesses. His evidence should not be singled out and held up to suspicion. ''We think that it is error for the court to single out any special witness, personally, and burden his

testimony with any suggestions which might indicate to the jury that, in the opinion of the court, such witness was liable to testify falsely. Instructions as to the credibility of witnesses should be general, and apply equally to all of the witnesses for the state and the defendant alike. Because a witness may be the defendant is no reason why he should be visited with condemnation upon the one hand, or clothed with sanctity upon the other. He is before the court, as a witness, and should be treated by both the court and the jury just as other witnesses are treated—no better and no worse. We trust that the courts in Oklahoma will cease to give such instructions in the future; otherwise it will result in the reversal of many convictions which, but for such instructions, would be affirmed.'' *Fletcher* v. *State* (Okla.), 23 L. R. A. N. S. 581 (592).

State's Instruction No. 2 relates to the credibility of witnesses, and gives to the jury the right to disregard the testimony of any witness who in the opinion of the jury may have wilfully and knowingly testified falsely in the case, etc. Defendants contend that before a jury is permitted to disregard the testimony of a witness it must believe that such witness has falsified to a *material fact;* and that in not so specifying, the instruction is bad. This contention is well taken. ''Independent of any statute relating to charging the jury in respect to the principle involved in the maxim falsus in uno, falsus in omnibus, it has been uniformly held that it is error to instruct them that if they find a witness has testified falsely in one part of his testimony, they may disregard the whole of the testimony of such witness, without limiting the word 'falsely' by a qualifying word such as 'knowingly', 'wilfully', or 'corruptly', and without adding the further limitation 'upon material matter' ''. 14 R. C. L., p. 736, par. 11; *State* v. *Ringer,* 84 W. Va. 546 (551).

Our conclusion in this case does not indicate that the giving of an instruction like or similar to State's One and Two herein will always constitute reversible error. But the verdict in this case rests on conflicting evidence. We cannot say that the jury was not to some extent influenced by the State's instructions. If so, the verdict was to that extent based on

error. In *Buffington* v. *Lyons,* 71 W. Va. 114, it was held that the giving of an improper instruction raises a presumption of injury and prejudice. In *Caroway* v. *Cochran,* 71 W. Va. 698, an erroneous instruction given in a case where the evidence was conflicting, justified a new trial. Here we have not one, but two improper instructions, tending to prejudice the case of defendants before the jury. The defendants are entitled to a trial free from such erroneous instructions.

The judgment of the lower court will therefore be reversed, the verdict of the jury set aside, and a new trial awarded the defendants.

*Judgment reversed; verdict set aside; new trial awarded.*