536 S.E.2d 140

**Meliah Sue FARMER, Plaintiff
Below, Appellant,**

v.

**Corina KNIGHT and Brenda Knight,
Defendants Below, Appellees.**

No. 26743.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 16, 2000.

Decided June 16, 2000.

Dissenting Opinion of Justice
Starcher July 19, 2000.

Michael A. Esposito, Esq., Esposito & Esposito, Logan, West Virginia, Attorney for Appellant.

Charles S. Piccirillo, Esq., Shaffer & Shaffer, Charleston, West Virginia, Attorney for Appellees.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Logan County entered on January 26, 1999. Following a trial on liability and damages for personal injuries resulting from an automobile accident, the circuit court denied the appellant and plaintiff below, Meliah Farmer, a new trial and refused to alter or amend the jury's verdict finding her 49% negligent. In this appeal, the appellant contends that the evidence does not support the jury's finding with regard to liability. She also contends that the damages awarded by the jury were insufficient and that the circuit court erred by overruling her objection to the appellees' closing argument. Finally, the appellant contends that a new trial should have been granted once it was discovered that some of the jurors may have attended high school with her.

This Court has before it the petition for appeal, the entire record, and the briefs and

argument of counsel. For the reasons set forth below, we affirm the final order of the circuit court.

## I.

On January 15, 1992, Meliah Farmer (hereinafter "Farmer" or "appellant") telephoned her friend, Corina Knight (hereinafter "Knight" or "appellee"), and asked her for a ride home from the Pizza Hut where she was working. It had been snowing for the past few days, and although the main roads were clear, the secondary roads were ice and snow covered. Knight was driving a car owned by her mother, Brenda Knight, when she picked up Farmer. As Knight attempted to drive up the hill where Farmer's parents lived, the car began to slide. She stopped, backed the vehicle up, and attempted to go up the hill again. This time, the car slid off the road into the hillside causing Farmer to hit her head against the windshield.

Subsequently, Farmer sued Corina and Brenda Knight[1] claiming that she had suffered various bodily injuries, including a closed head injury, during the accident. Prior to trial, the appellees stipulated to medical expenses in the amount of $4,445.00 for treatment of the appellant's neck and back strain. However, the appellees did not stipulate to any past medical expenses for treatment of the alleged closed head injury.

At trial, the appellant failed to present any evidence concerning future medical treatment or future lost wages. Consequently, those claims for damages were dismissed at the close of the appellant's evidence. On September 24, 1997, the jury returned a verdict assessing 49% negligence on the part of the appellant and 51% negligence on the part of the appellees. The jury awarded the appellant $5,945.00 in total damages which included $4,445.00 in stipulated past medical expenses and $1,500.00 for past general damages, including pain and suffering, diminished ability to engage in normal activities, loss of enjoyment of life, and mental anguish. The jury awarded no damages for other past

medical expenses, past lost wages, or future general damages. With the deduction for the appellant's comparative negligence, the net verdict was $3,031.95. The circuit court added prejudgment interest in the amount of $1,743 .38 and entered a total judgment of $4,775.33 by order dated January 20, 1998. Thereafter, the appellant moved for a new trial, or in the alternative, amendment of the judgment. The motion was denied by order entered on January 26, 1999. This appeal followed.

## II.

■ As her first assignment of error, the appellant contends that the jury was clearly wrong in finding her 49% negligent. She maintains that the evidence did not support the jury's verdict. At trial, there was no dispute as to how the accident happened. Both Farmer and Knight testified that the car slid into the hillside on a second attempt to drive up the road to Farmer's parents' house. The issue for the jury to decide was whether Farmer participated in or concurred with the decision to drive up the hill. In this regard, Knight testified that Farmer never attempted to get out of the car after it slid the first time, nor did Farmer ask her not to try to drive up the hill again. Knight claimed that Farmer never said to stop the car or park at the bottom of the hill. To the contrary, Farmer testified that she told Knight to park the car at the bottom of the hill and they would walk up to her house. She said that Knight told her they could make it and did not give her time to get out of the car before starting up the hill a second time. However, Farmer conceded that she could have gotten out of the car before they tried to drive up the hill the first time.

■ This Court has often stated that "'"[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it."

---

1. The appellant alleged that Corina Knight was operating the vehicle pursuant to the Family Purpose Doctrine making Brenda Knight, her mother and owner of the vehicle, liable for any and all negligence of her daughter.

Point 4, Syllabus, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894.' Syllabus Point 2, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963)." Syllabus Point 5, *Toler v. Hager,* 205 W.Va. 468, 519 S.E.2d 166 (1999). In addition, we have held that " ' "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting." Point 3, Syllabus, *Long v. City of Weirton,* [158] W.Va. [741], (1975) 214 S.E.2d 832.' Syllabus Point 2, *Bourne v. Mooney,* 163 W.Va. 144, 254 S.E.2d 819 (1979)." Syllabus Point 2, *Toler.* Furthermore, " ' " '[w]here, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong.' Point 2, Syllabus, *French v. Sinkford,* 132 W.Va. 66 [54 S.E.2d 38]." Syllabus Point 6, *Earl T. Browder, Inc. v. County Court,* 145 W.Va. 696, 116 S.E.2d 867 (1960).' Syllabus Point 2, *Rhodes v. National Homes Corp.,* 163 W.Va. 669, 263 S.E.2d 84 (1979)." Syllabus Point 3, *Toler.*

■ Based on the evidence that was presented in this case, the jury was given an instruction on assumption of the risk.[2] "The doctrine of assumed or incurred risk is based upon the existence of a factual situation in which the act of the defendant alone creates the danger and causes the injury and the plaintiff voluntarily exposes himself to the danger with full knowledge and appreciation of its existence." *Hollen v. Linger,* 151 W.Va. 255, 263, 151 S.E.2d 330, 335 (1966). Apparently, the jury believed that Farmer had in fact assumed some risk of injury and was almost at fault as much as Knight was for the accident. During her testimony,

Farmer admitted that she was aware of the dangerous road conditions and that she had the opportunity to get out the car before Knight tried to drive up the hill the first time. Given this evidence, we do not find the jury's verdict finding that the appellant assumed the risk of injury plainly wrong.

■ The appellant also argues that the damages awarded by the jury were insufficient. As noted above, the parties stipulated to $4,445.00 in medical expenses for treatment of appellant's neck and back strain. An additional $1,500.00 for past general damages was awarded by the jury. Initially, the jury awarded $0 for past general damages. However, after receiving the verdict, the court instructed the members of the jury that they were required to determine a reasonable amount for pain and suffering because medical expenses had been granted. After further deliberations, the jury awarded $1,500.00 for pain and suffering. The appellant claims that the jury's verdict did not adequately compensate her for past pain and suffering, diminished ability to engage in normal activities, loss of enjoyment of life, mental anguish, and lost wages.

At trial, the appellant introduced evidence to show that she sustained a closed head injury during the accident. Specifically, the appellant presented the testimony of Dr. Jeffrey Harlow, a licensed psychologist. Dr. Harlow performed a neuropsychological assessment of the appellant and met with her on several occasions. Dr. Harlow testified that he believed that the appellant had suffered a closed head injury during the accident which caused neurophysiological dysfunction and depression.[3]

2. The jury was instructed as follows:
   Under the law of the State of West Virginia, some degree of negligence or fault may be attributed to a party for the happening of an accident where the evidence shows that the party had actual knowledge of a dangerous condition and voluntarily exposed herself to that dangerous condition, thus assuming the risk of the condition and her injury.
   Therefore, if after considering all the evidence, you find by a preponderance of the evidence that a dangerous condition was created by the snow covered inclined roadway, that Meliah Farmer had actual knowledge of the

snow covered roadway and the dangerous driving conditions created thereby and that she nonetheless voluntarily remained a passenger in the vehicle being operated by Corina Knight when she could have removed herself from the vehicle, then you may apportion some degree of negligence or fault to Meliah Farmer.

3. Dr. Roger Biasas also testified by evidentiary deposition on behalf of the appellant. While Dr. Biasas' testimony was read to the jury during the trial, his testimony was not made a part of the trial transcript that was presented to this Court.

The appellees disputed this evidence and argued that the appellant had only suffered minor injuries during the accident. They presented evidence which showed that the appellant was treated at Logan General Hospital on the night of the accident for a superficial laceration to the bridge of her nose. The emergency room records indicated that there was no loss of consciousness. The appellees also introduced evidence suggesting that the appellant's depression was related to family problems. Dr. John Hutton, a neuropsychiatrist who performed an independent examination of the appellant on behalf of the appellees, testified that the appellant's depression and borderline intellectual functioning were not caused by the automobile accident.

■ In Syllabus Point 1 of *Combs v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1999), this Court held that:

In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial must be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict. Syllabus point 3, *Biddle v. Haddix*, 154 W.Va. 748, 179 S.E.2d 215 (1971).

However, we have also held that " '[i]n an action for personal injuries, the damages are unliquidated and indeterminate in character, and the assessment of such damages is the peculiar and exclusive province of the jury.' Syllabus Point 3, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945)." Syllabus Point 4, *Toler, supra*. Moreover, " '[i]n an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant.' Syl. Pt. 1, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983)." Syllabus Point 1, *Hewett v. Frye*, 184 W.Va. 477, 401 S.E.2d 222 (1990).

■ After hearing all of the evidence concerning medical damages, the jury chose not to award any additional medical expenses other than those stipulated to by the parties prior to trial. Viewing the evidence most strongly in favor of the appellees, the evidence permits the conclusion obviously reached by the jury, i.e., that the appellant did not sustain a closed head injury. Likewise, the evidence supports the jury's decision awarding $0 for past lost wages. At trial, the appellant testified that she had only worked at Pizza Hut for two months prior to the accident. She had three children in the four years since the accident. There was also testimony that the appellant had suffered from depression because of family problems. From this evidence, the jury could have reasonably concluded that the appellant had not attempted to return to work for reasons unrelated to the automobile accident. Accordingly, we do not find that the damages awarded by the jury were manifestly inadequate.

■ The appellant's next assignment of error concerns certain remarks made by counsel for the appellees during closing argument. In particular, the appellant contends that the circuit court erred by refusing to allow her counsel to object to the following remarks made by counsel for the appellees:

I think she's been victimized by the system, by her boyfriend, by her family, by her attorney. This is a made up case with regard to the head injury.

While the circuit court refused the appellant's counsel permission to approach the bench when this statement was made, the objection was addressed after the arguments were completed and the jury was sent to the jury room for deliberations. Specifically, the court stated,

I just want to put on the record it was obvious what the objection was, and I noted it and I didn't see grounds for the objection. That's probably the strongest I've ever heard Mr. Piccirillo argue in a case, particularly in that direction, but I didn't see anything where I would have sustained an objection, but it was obvious what you were objecting to and I considered that.

■ The circuit court's decision to address the objection after closing arguments were completed is not unusual considering the fact that such objections are generally

disfavored.[4]  In Syllabus Point 2 of *State v. Bennett*, 183 W.Va. 570, 396 S.E.2d 751 (1990), this Court stated that:

> " 'The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom.' Syllabus point 3, *State v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927)." Syl. Pt. 9, *State v. Flint*, 171 W.Va. 676, 301 S.E.2d 765 (1983).

We have also noted that " '[g]reat latitude is allowed counsel in argument of cases, but counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury[.]' Syl. pt. 2, [in part,] *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978)." Syllabus Point 8, in part, *Mackey v. Irisari*, 191 W.Va. 355, 445 S.E.2d 742 (1994).

After a thorough review of the record in this case, we do not find that any prejudice or manifest injustice resulted from comments made by the appellees' counsel.  As noted above, one of the primary issues in this case was whether the appellant suffered a closed head injury during the accident.  The appellees vigorously contested this allegation, and the comments made by the appellees' counsel were obviously meant to convey the appellees' theory of the case.  Under these circumstances, and considering the often subjective nature of the symptoms of such an injury, we do not believe that the circuit court abused its discretion by allowing the argument made by the appellees.

▮▮▮▮▮  Finally, the appellant contends that the circuit court erred in failing to grant a new trial when "it was discovered after the trial that certain jurors failed to disclose facts during voir dire which would have indicated their inability to render a just and true verdict."  The appellant's contentions in this regard are very vague and were not devel-

oped in her brief.  Based on the final order, it appears that the appellant asserted that she may have attended high school with some of the jurors.  There is no transcript of any hearing or any indication in the record regarding what evidence the appellant presented to the circuit court in support of her motion for a new trial on this basis.  Accordingly, we decline to address this issue further.  As we have previously noted, "[i]t is . . . well settled . . . that casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal." *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) (citation omitted).

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Logan County entered on January 26, 1999, is affirmed.

Affirmed.

Justice McGRAW dissents.

STARCHER, Justice, dissenting.

(Filed July 19, 2000)

The facts in this case can be summed up quite simply: the defendant was driving her car in a careless, negligent fashion.  The plaintiff, a passenger in the car, didn't vociferously object to the defendant's carelessness.  More specifically, she didn't demand that the defendant immediately stop the car so she could get out.[1]  Based upon this, the circuit judge let the jury decide if they thought the plaintiff was negligent.  The jury decided the plaintiff was 49% negligent.

This is absurd.  A person driving a car has a duty of due care to drive in a way that does not cause injury to passengers in the vehicle.  A passenger does not—repeat, does not—have a duty to play "backseat driver" and demand that the driver operate the car in a particular way, or jump out of the car if the driver does something that looks dangerous.

If a driver is speeding and is pulled over by a police officer, could his defense be that

---

**4.** *See* Rule 23.04 of the West Virginia Trial Court Rules.

**1.** Under normal circumstances, a passenger in an automobile should never be held to be a contributor to the negligence of a driver.  Admit-

tedly, one can conjure up scenarios that might demand a different result.  For example, if a passenger engaged in "horseplay" that included grabbing the steering wheel while the automobile was in operation—that passenger might be said to have contributed to a resulting accident.

"my passenger didn't tell me to slow down, so give her a ticket too?" The majority seems to indicate that the passenger should receive a speeding ticket—using the majority's logic, the passenger is just as culpable, simply because the passenger didn't get out of the car the instant she saw that the driver might exceed the speed limit.

I cannot accept the circuit court's actions in this case. The jury should never have been given a comparative negligence or assumption of the risk instruction.

Unfortunately, the majority opinion never reached this legal argument by the plaintiff. Instead, the majority opinion looked solely to the facts, and decided that the facts could support a finding by the jury of comparative negligence—and therefore, the jury's verdict should stand. I disagree—the problem is, the jury should never have been instructed on comparative negligence to start with. The majority opinion should have addressed that legal argument instead, and then reversed the verdict to allow a retrial without any type of comparative negligence instruction.

I therefore dissent.